No. 22-7199

———————————————

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE FOURTH CIRCUIT

———————————————

**ALBERT ANDERSON,**
Plaintiff – Appellant,

**v.**

**B. FERGUSON,**
Defendant – Appellee.

———————————————

**Appeal from the United States District Court
for the Middle District of North Carolina**

———————————————

## BRIEF OF APPELLANT

Erica Hashimoto                     Georgetown University Law Center
*Director*                          Appellate Litigation Program
                                    111 F Street NW, Suite 306
Mary Borchers                       Washington, D.C. 20001
Zacharia Hasan                      (202) 662-9555
*Student Counsel*                   eh502@georgetown.edu

                                    *Counsel for Appellant*

                                    November 20, 2023

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................i

TABLE OF AUTHORITIES ..............................................................ii

STATEMENT OF JURISDICTION ......................................................1

STATEMENT OF THE ISSUES........................................................2

STATEMENT OF THE CASE .........................................................3

SUMMARY OF THE ARGUMENT .....................................................14

ARGUMENT ...........................................................................16

   I. Officer Ferguson Used Excessive Force When He Ground His Thumb Into Mr. Anderson's Neck. ................................................ 16

      A.   Mr. Anderson Posed No Threat When Officer Ferguson Inflicted Pain on Him................................................................ 17

      B.   Officer Ferguson's Infliction of Pain Was Unnecessary and Disproportionate. ...................................................... 21

   II. The District Court Abused Its Discretion in Denying Mr. Anderson Leave to Amend His Complaint. ............................... 26

STATEMENT REGARDING ORAL ARGUMENT ..............................32

CERTIFICATE OF COMPLIANCE...............................................33

CERTIFICATE OF SERVICE................................................34

i

# TABLE OF AUTHORITIES

## CASES

*Aleman v. City of Charlotte*, 80 F.4th 264 (4th Cir. 2023).......................19

*Bailey v. Kennedy*, 349 F.3d 731 (4th Cir. 2003) ...................................21

*Dominguez v. City of Scottsdale*, 587 F. Supp. 3d 914 (D. Ariz. 2022)...24

*Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892
    (4th Cir. 2016) ...........................................................................16

*Foman v. Davis*, 371 U.S. 178 (1962)..............................................27, 31

*Graham v. Connor*, 490 U.S. 386 (1989) ...............................17, 19, 22

*Jennings v. Jones*, 499 F.3d 2 (1st Cir. 2007) .........................................25

*Jones v. City of Martinsburg*, 961 F.3d 661 (4th Cir. 2020) ...................21

*Kopf v. Wing*, 45 F.3d 426 (4th Cir. 1995) .............................................25

*Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006) ................................27, 29

*Lunneen v. Vill. of Berrien Springs*, No. 22-2044, No. 22-2046, 2023 WL
    6162876 (6th Cir. Sept. 21, 2023) ................................................24, 25

*Meyers v. Baltimore Cnty.*, 713 F.3d 723 (4th Cir. 2013) ........... 18, 22, 24

*Perkins v. United States*, 55 F.3d 910 (4th Cir. 1995) ...........................29

*Sawyer v. Asbury*, 537 Fed. App'x 283 (4th Cir. 2013) ..........................22

*United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185
    (4th Cir. 2022) ....................................................................27, 28, 29

*Wall v. Rasnick*, 42 F.4th 214 (4th Cir. 2022) .......................................30

*Yates v. Terry*, 817 F.3d 877 (4th Cir. 2016)..........................................17

*Young v. Prince George's Cnty.*, 355 F.3d 751 (4th Cir. 2004)..........17, 18

## STATUTES

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1331 ...................................................................................1

28 U.S.C. § 1915 .................................................................................10

42 U.S.C. § 1983 ...............................................................................3, 9

## RULES

Fed. R. Civ. P. 15..................................................................................27

ii

## STATEMENT OF JURISDICTION

Plaintiff-Appellant Albert Anderson filed this Section 1983 action in the Middle District of North Carolina alleging that three police officers, including Defendant-Appellee B.A.M. Ferguson, used excessive force against him in violation of his Fourth Amendment rights. JA10–26. The district court had jurisdiction under 28 U.S.C. § 1331. On September 14, 2022, the court granted summary judgment to Officer Ferguson and entered a final order resolving all issues in the case. JA217. Mr. Anderson timely filed a notice of appeal on October 4, 2022. JA218–243. This Court has jurisdiction under 28 U.S.C. § 1291.

1

## STATEMENT OF THE ISSUES

1. Whether the district court erred in concluding that no reasonable jury could find that Officer Ferguson used excessive force when he applied the mandibular angle pressure point technique, a pain compliance mechanism, to Mr. Anderson's neck while Mr. Anderson was tightly handcuffed, lying face-down, and restrained by multiple officers.

2. Whether the district court abused its discretion by denying Mr. Anderson leave to amend his complaint to add two other officers as defendants where the district court failed to mention—let alone point to any evidence of—prejudice, futility, or bad faith.

## STATEMENT OF THE CASE

This case is about the lawfulness of the force that three Winston-Salem police officers used against Mr. Anderson during his arrest.  Mr. Anderson sued Officer Ferguson under 42 U.S.C. § 1983, alleging that Officer Ferguson had used excessive force in violation of the Fourth Amendment.  Mr. Anderson later sought leave to amend his complaint to add as defendants the two other officers involved in arresting him, Sergeant Phillips and Officer Wagoner, arguing that they had also violated his Fourth Amendment rights.  Mr. Anderson now appeals the district court's grant of Officer Ferguson's motion for summary judgment and the district court's denial of Mr. Anderson's motion for leave to amend his complaint.

### I.      Statement of Facts

Officer Ferguson, a police officer for the city of Winston-Salem, North Carolina, received a tip from a confidential informant that a Black man with dreadlocks riding a red scooter was leaving a particular apartment complex and had a black handgun and possibly narcotics.  JA93.  After seeing Mr. Anderson on a red scooter, Officer Ferguson chased and tackled him.  JA94–95.  Officer Ferguson, Officer Wagoner, and Sergeant Phillips handcuffed and knelt on Mr. Anderson.  JA95,

3

JA108, JA113.   Officer Ferguson then applied a mandibular angle pressure point technique—a technique used to inflict pain on a person's neck to compel them to comply with an arrest.   JA96.   A video of the incident from Officer Ferguson's body-worn camera documents most of the encounter.   The facts set forth below are based primarily on that video.

Driving an unmarked white car, Officer Ferguson spotted Mr. Anderson on the side of the road with a red motorized scooter.   Video at 0:30.   Upon seeing Mr. Anderson, Officer Ferguson said to Officer Wagoner, who was sitting in the passenger seat, JA92, "Gonna pull him over, he don't have a tag."   Video at 0:31.   Officer Ferguson sped up.   *Id.* at 0:32.   As his car approached Mr. Anderson's left side, Officer Ferguson moved his car to the right and boxed in Mr. Anderson.   *Id.* at 0:34–35.   Officer Wagoner flung open the passenger side door into Mr. Anderson, knocking him off of the scooter.   *Id.*   One of the officers shouted, "Don't run!"   *Id.* at 0:35.   Neither officer verbally identified himself as a law enforcement official.

Mr. Anderson, "not knowing who . . . was in the car, . . . ran for [his] life."   JA17.   Officers Ferguson and Wagoner began chasing him on foot.

4

Video at 0:39–0:40. During the short chase, Mr. Anderson's pants began to fall down. *Id.* at 0:48. As Mr. Anderson reached down to hold on to or pull up his pants, Officer Ferguson shouted: "Show me your hands, dude! Stop reaching!" *Id.* at 0:47–0:49. Mr. Anderson, whose pants at that point were around his ankles, tripped and rolled, ending up on his knees in the street. *Id.* at 0:51. Sergeant Phillips, joining the pursuit, almost hit Mr. Anderson with his unmarked orange car. *Id.*; JA107–108. Running at full speed, Officer Ferguson grabbed Mr. Anderson's dreadlocks with both hands and yanked him to a prone position, ripping his dreadlocks out of his head. Video at 0:53–0:55. At this point, Mr. Anderson was face-down on the ground. *Id.* at 0:56.

Officer Ferguson shouted, "Let me see your hands!" *Id.* at 0:57–0:58. And then, "Give me your other hand!" *Id.* at 0:58–0:59. Officer Ferguson and Sergeant Phillips began to pull Mr. Anderson's hands behind his back. *Id.* at 1:00–1:01. Officer Ferguson forced Mr. Anderson's arm behind his back as he yelled, "Give me your fucking hand! Give me your hand." *Id.* at 1:01–1:03.

The three officers mounted Mr. Anderson. *Id.* at 1:05. Both of Mr. Anderson's hands were behind his back by then. *Id.* As the officers put

5

handcuffs on, Sergeant Phillips grasped Mr. Anderson's left hand while digging his knee into Mr. Anderson's neck. *Id.* at 1:06. Officer Wagoner dug his knee into Mr. Anderson's naked buttocks (Mr. Anderson's pants remained at his ankles). *Id.* at 1:07. Officer Ferguson sat atop Mr. Anderson gripping his right hand. *Id.* at 1:14. The three officers secured handcuffs around Mr. Anderson's wrists. *Id.* at 1:07–1:19.

After the handcuffs were fastened and Mr. Anderson was fully restrained, Officer Ferguson shouted at him, "Stop moving!" *Id.* at 1:23. When Officer Ferguson gave that command, the video does not show any movement by Mr. Anderson. *Id.* After that shout, Officer Ferguson's hand and face blocked the body camera for approximately ten seconds, making it impossible to see what was happening. *Id.* at 1:28–1:38. When the scene became visible again, the camera captured only Mr. Anderson's motionless arm as Officer Ferguson again shouted, "Stop moving!" *Id.* at 1:43. The camera angle then shifted as Officer Ferguson moved to again crouch over Mr. Anderson and yelled, "Didn't I say stop fucking moving!" *Id.* at 1:44–1:45. The only movement of Mr. Anderson that the video captured was when Officer Ferguson jerked Mr. Anderson's head up by the hood of the sweatshirt. *Id.* at 1:46. Mr. Anderson's dreadlocks, which

6

Officer Ferguson had ripped out of his head at the beginning of the encounter, fell to the ground.  *Id.*

Officer Ferguson grabbed Mr. Anderson by the neck and head and, applying the mandibular angle pressure point technique, drove his thumb into Mr. Anderson's neck directly below his ear.  *Id.* at 1:47.  "Stop moving!" he shouted again.  *Id.* at 1:49.



Officer Ferguson continued to dig his thumb into Mr. Anderson's neck for approximately ten seconds as Mr. Anderson lay still, face-down on the pavement.  *Id.*  at 1:47–1:56.  The video does not show any movement by Mr. Anderson.  *Id.*  Mr. Anderson says that he felt choked and that he fainted.  JA20.   During the technique, Officer Ferguson exclaimed,

"Albert Anderson, that's who it is," as he continued to dig his thumb into Mr. Anderson's neck and jaw.  Video at 1:51.

Seconds later, Mr. Anderson told the officers, "I can't breathe."  *Id.* at 2:11–2:12.  Officer Ferguson immediately responded, "You can breathe."  *Id.* at 2:12–2:13.  Officer Ferguson then began searching through Mr. Anderson's jacket pockets.  *Id.* at 2:15.  "He was reaching," Officer Ferguson said.  *Id.* at 2:20.

Mr. Anderson began pleading: "Pull my pants up, please."  *Id.* at 2:28–2:29.  Officer Ferguson responded, "I ain't doing anything right now."  *Id.* at 2:31–2:33.  Mr. Anderson noticed his dreadlock lying on the street, and he said, "Oh, you pulled my hair out.  Oh shit.  These shit's [the handcuffs] too tight, man."  *Id.* at 2:34–2:39.  Officer Ferguson yelled: "Well you shouldn't have been fighting!  I ain't doing anything right now."  *Id.* at 2:40–2:43.

Mr. Anderson continued to insist that the handcuffs were too tight. *Id.* at 2:46, 2:54–2:55.  "Well stop moving!  You should have listened!" Officer Ferguson replied again.  *Id.* at 2:55–2:57.  The next twenty seconds of the video portray Mr. Anderson repeatedly asking Officer Ferguson to mitigate his pain and loosen the handcuffs, and Officer

8

Ferguson refusing to do so: "I don't care, Albert! I'm not doing anything with the cuffs. I'll fix them in a minute. If you would have cooperated, you wouldn't have to worry about getting cuffs on tight."[1] *Id.* at 3:11–3:20.

At that point, Sergeant Phillips finally began pulling Mr. Anderson's pants, which had been down for over two minutes, up around his waist. *Id.* at 3:50–3:53. After searching the area where Mr. Anderson ran, Officer Ferguson recovered a gun. *Id.* at 5:22–6:05. When he returned, he asked Mr. Anderson whether he was hurt. *Id.* at 9:27. Mr. Anderson replied that his head hurt. *Id.* at 9:30–9:33. Officer Ferguson said that he would call EMS to examine Mr. Anderson, *id.* at 9:36–9:40, and Mr. Anderson was placed in a car, at which point the video ends. *Id.* at 11:03.

## II. Procedural History

Mr. Anderson, proceeding pro se, filed suit under 42 U.S.C. § 1983, alleging that three Winston-Salem police officers—Ferguson, Boissey, and LaValley—had used excessive force against him during the arrest.

---

[1] The video does not show Officer Ferguson loosening Mr. Anderson's handcuffs at any point.

9

JA10–26.  Mr. Anderson raised claims against the officers in both their individual and official capacities, as well as a claim against Winston-Salem's police chief.  JA12–14.  Mr. Anderson subsequently filed an amended complaint as of right against the same defendants.  JA27–41. The district court screened Mr. Anderson's claims under 28 U.S.C. § 1915, ruling that the individual capacity claims against Officers Ferguson, Boissey, and LaValley could move forward, and dismissing Mr. Anderson's official capacity claims against the officers and his claim against Winston-Salem's police chief.  JA42–48.

Less than three weeks later, Mr. Anderson learned for the first time through discovery provided to his defense attorney in the related criminal case that Officer Wagoner and Sergeant Phillips had been involved in his arrest.  JA49.  Mr. Anderson filed a motion to amend his complaint to add both of them, alleging that Officer Wagoner and Sergeant Phillips had used excessive force and sexually assaulted him during his arrest.  *Id.* After summonses were issued for Officers Ferguson, Boissey, and LaValley, Mr. Anderson moved to withdraw his motion to amend, telling the district court that he "no longer wish[ed] to propose any new defendants" due to his "understanding [not being] the best" and his status

10

as a mental health patient. JA50. Three weeks later, Mr. Anderson renewed his motion to amend his complaint to add Officer Wagoner and Sergeant Phillips, explaining that he had experienced memory loss and post-traumatic stress disorder after the arrest which left him unable "to think correctly or comprehend normal[l]y." JA51. Mr. Anderson also sought to add several other defendants.[2] JA51-56. The district court denied Mr. Anderson leave to amend in a text order, finding that: (1) "[n]othing . . . explain[ed] [Mr. Anderson's] reversal of his reversal regarding the addition of Phillips and Wagoner," and (2) adding the other defendants Mr. Anderson had proposed would be futile. JA5.

Officers Ferguson, Boissey, and LaValley then filed their answer to the complaint, JA57–62, and subsequently moved for summary judgment, JA63–65, which Mr. Anderson opposed. JA116–120. The magistrate judge issued a recommendation and report in favor of granting summary judgment to the defendants. JA135. The report recommended granting summary judgment in favor of Officers Boissey

---

[2] In both this motion and his earlier motion, Mr. Anderson alleged misconduct by Winston-Salem Officer Sisk. He also sought, in this motion, to add Winston-Salem Officer Bross, the District Three Street Crimes Unit, and the Field Services Bureau Street Crimes Unit to his complaint. JA51. This brief does not address those claims.

and LaValley because they had not participated in Mr. Anderson's arrest; rather, the other officers involved were Officer Wagoner and Sergeant Phillips. JA187–188. Turning to Officer Ferguson and applying the excessive force factors articulated in *Graham v. Connor*, 490 U.S. 386, 396 (1989), the report concluded that Officer Ferguson acted reasonably and did not use excessive force against Mr. Anderson. JA192. While recognizing that Mr. Anderson was suspected only of two minor traffic offenses, the report found the use of force reasonable because Officer Ferguson suspected that Mr. Anderson was armed and Mr. Anderson initially fled when stopped. JA190–192. Regarding the pressure Officer Ferguson applied to Mr. Anderson's neck, the report concluded it was reasonable because Mr. Anderson "continued moving around . . . against Officer Ferguson's orders" post-takedown. JA192.

Mr. Anderson filed objections to the report. JA195–216. The district court adopted the report on September 14, 2022, and granted summary judgment in favor of Officer Ferguson. JA217.

Mr. Anderson timely filed a notice of appeal on October 4, 2022. JA218–243. This Court appointed undersigned counsel and identified as an issue of particular interest whether Officer Ferguson's "use of

12

mandibular angle pressure point technique amounted to excessive force."

Doc. 29.

## SUMMARY OF THE ARGUMENT

Officer Ferguson inflicted excessive force when he used a mandibular angle pressure point technique to dig into a nerve in Mr. Anderson's neck. This technique is used to inflict serious pain in order to gain compliance from a threatening or resistant person. But when Officer Ferguson used this pain-compliance technique, Mr. Anderson was lying face-down in the street, subdued and tightly handcuffed with his pants around his ankles, while Officer Wagoner knelt on his back. No force was needed.

A reasonable jury could conclude both that Mr. Anderson did not pose an immediate threat and that he was compliant when Officer Ferguson applied this excessive, gratuitous force. Officer Ferguson's only command to Mr. Anderson before inflicting this painful force was to "stop moving." But a reasonable jury viewing the video could conclude that Mr. Anderson was not moving. Further, a reasonable jury viewing the totality of Officer Ferguson's violence against Mr. Anderson—from ripping out Mr. Anderson's hair to refusing to loosen his handcuffs despite his repeated pleas—would have reason to doubt Officer Ferguson's assertions about why he needed to use this force. The district court erred in granting summary judgment to Officer Ferguson.

14

The district court also erred when it denied Mr. Anderson leave to amend his complaint to add Officer Wagoner and Sergeant Phillips as defendants.  Mr. Anderson's simple pro se mistake in naming the police officers who arrested him, which he quickly sought to correct by adding the proper defendants, is exactly the sort of error Rule 15 contemplates. The district court abused its discretion in denying Mr. Anderson that minor amendment to his complaint at the outset of his case.  This Court's precedent establishes that district courts should liberally grant leave to amend unless the amendment would be prejudicial, futile, or in bad faith. Because the district court failed to identify—or offer a basis for finding—any of these three narrow circumstances, it abused its discretion.

## ARGUMENT

### I. OFFICER FERGUSON USED EXCESSIVE FORCE WHEN HE GROUND HIS THUMB INTO MR. ANDERSON'S NECK.

The district court erred in granting Officer Ferguson summary judgment because genuine issues of material fact remain over both whether Mr. Anderson posed a risk to the officers when Officer Ferguson applied pressure to Mr. Anderson's neck and the severity of the pressure applied. A district court's grant of summary judgment is reviewed de novo, viewing the evidence in the light most favorable to Mr. Anderson, the non-moving party. *See Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 895–96 (4th Cir. 2016). The mandibular angle pressure point technique uses painful force on the mandibular nerve on a person's neck in order to gain compliance with an order. *See* JA96, JA145. Officer Ferguson used this painful force on Mr. Anderson when he was already compliant, nonthreatening, and restrained by tight handcuffs. A reasonable jury, viewing the facts in the light most favorable to Mr. Anderson, could conclude that there was no reasonable justification for Officer Ferguson's force against Mr. Anderson.

## A. Mr. Anderson Posed No Threat When Officer Ferguson Inflicted Pain on Him.

The factors the Supreme Court set out in *Graham* demonstrate that Mr. Anderson did not pose a threat when Officer Ferguson applied force. The three factors the Court discussed—"the severity of the crime at issue, whether the [person] poses an immediate threat to the safety of the officers or others, and whether [the person] is actively resisting arrest or attempting to evade arrest by flight"—all demonstrate that Mr. Anderson posed little to no risk. *See Graham v. Connor*, 490 U.S. 386, 396 (1989).

Start with the slight nature of the infractions at issue. Officer Ferguson had stopped Mr. Anderson only for committing two minor traffic violations—riding his scooter without a helmet or a tag. JA93. This Court has held that where the offense thought to have been committed is a "minor" one, such as driving without a license or driving with taillights out, law enforcement officers are less justified in using force. *Yates v. Terry*, 817 F.3d 877, 885 (4th Cir. 2016); *Young v. Prince George's Cnty.*, 355 F.3d 751, 757 (4th Cir. 2004).

That Mr. Anderson subsequently fled is of no moment because at the time the force was applied, he posed no immediate threat to the safety of the officers. *See Graham*, 490 U.S. at 396. When Officer Ferguson

17

applied the mandibular pain technique, Mr. Anderson was handcuffed and face-down on the pavement. *See* video at 1:47. Officer Wagoner knelt on Mr. Anderson's back while Officer Ferguson crouched above him and Sergeant Phillips stood nearby. *See id.* at 1:40. A reasonable jury could conclude that Mr. Anderson—handcuffed and knelt on by Officer Wagoner—did not pose any, let alone an immediate, threat when Officer Ferguson applied pain. *See Meyers v. Baltimore Cnty.*, 713 F.3d 723, 733–34 (4th Cir. 2013) (holding that a person with a baseball bat no longer posed a threat where the person had been restrained and dropped the bat and multiple officers sat on him). Mr. Anderson was even more restrained than the person in *Meyers*. When Officer Ferguson inflicted pain, not only was Mr. Anderson face-down and restrained by multiple officers with Officer Wagoner pushing a knee into his back, but he also was tightly handcuffed. Video at 1:47.

A reasonable jury could reach this conclusion even though Officer Ferguson had information that Mr. Anderson may have been armed. Where an individual is armed but has been handcuffed and restrained, the threat they posed prior to being restrained dissipates. *See Young*, 355 F.3d at 757–58 (reasoning that because Young had been handcuffed

18

by the time force was applied, he "posed little, if no, threat" despite being armed).

A reasonable jury could likewise conclude that Mr. Anderson posed no threat because he was not fleeing or resisting arrest when Officer Ferguson applied the mandibular pain technique. The risk posed by an individual depends on whether, at the moment the force is applied, the individual is attempting to flee or resist arrest. *Graham*, 490 U.S. at 396; *Aleman v. City of Charlotte*, 80 F.4th 264, 285 (4th Cir. 2023). When Officer Ferguson shouted, "Stop moving!" at Mr. Anderson, the camera panned away from Mr. Anderson's body, but from what can be seen of his head, he was lying still until Officer Ferguson jerked him by his hood. *See* video at 1:43. "Didn't I say stop fucking moving?" Officer Ferguson shouted again. *See id.* at 1:44–1:45. Without any warning, and while Mr. Anderson was completely restrained, Officer Ferguson then applied the mandibular pain technique. Video at 1:47–1:56. During this time, Mr. Anderson was lying still. *Id.* The video therefore belies Officer Ferguson's contention that he used the mandibular pain technique because he perceived Mr. Anderson to be moving.

19

Even if Mr. Anderson was moving slightly before Officer Ferguson's application of the mandibular compliance technique, a reasonable jury could conclude that Mr. Anderson was responding instinctively to the officers who were on top of him and grinding his body into the ground. *See id.* at 1:40. This Court has recognized that instinctive responses to force are not meaningful acts of resistance to arrest. In *Yates*, for example, this Court reaffirmed that a person who is seized should not be presumed to be resisting "simply because he is doing something that can be characterized as resistance," such as preventing an officer from manipulating his body. *Yates*, 817 F.3d at 886 (quoting *Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 909 (4th Cir. 2016)).

Mr. Anderson pleaded in the video that he could not breathe and in his complaint that he "fainted out of shock." Video at 2:11–2:12; JA18. At most, Mr. Anderson, fully handcuffed, appears to have been squirming slightly as Officer Wagoner knelt atop him while Officer Ferguson yanked on the hood of his sweatshirt and jerked his head. Video at 1:42–1:46. It is the province of a jury to decide whether these slight movements, while Mr. Anderson was handcuffed, face-down, and struggling for breath with officers on top of him, were instinctual

20

movements for self-protection as he struggled to breathe and remain conscious. Because a reasonable jury could find that Mr. Anderson's movements were passive or instinctual movements made during the arrest, those actions cannot properly be characterized as resistance for purposes of summary judgment. *See Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994); *Smith v. Ray*, 781 F.3d 95, 103 (4th Cir. 2015). Thus, all three *Graham* factors weigh in favor of Mr. Anderson.

## B. Officer Ferguson's Infliction of Pain Was Unnecessary and Disproportionate.

Officer Ferguson used disproportionate and excessive force when he dug his thumb into Mr. Anderson's mandibular nerve despite Mr. Anderson's compliance. As discussed *supra* Part I.A, Mr. Anderson posed no risk to the officers when he was lying face-down, surrounded by officers, and tightly handcuffed on the ground. This Court has repeatedly held that using force to gain compliance is excessive when a person is neither resisting nor threatening officers. *See, e.g.*, *Jones v. City of Martinsburg*, 961 F.3d 661, 668 (4th Cir. 2020); *Bailey v. Kennedy*, 349 F.3d 731, 745 (4th Cir. 2003). Viewing Officer Ferguson's actions in the light most favorable to Mr. Anderson and "with an eye toward the proportionality of the force in light of all the circumstances," a reasonable

jury could conclude that Officer Ferguson's use of deliberately painful pressure on Mr. Anderson's neck was unreasonable and subjected Mr. Anderson to excessive force. *See Armstrong*, 810 F.3d at 899 (quoting *Graham*, 490 U.S. at 396).

The painful pressure that Officer Ferguson applied to Mr. Anderson's neck is only reasonable when an individual poses a threat or is resisting arrest. *See Yates v. Terry*, 817 F.3d 877, 888 (4th Cir. 2016); *see also Bailey*, 349 F.3d at 745 (holding it was excessive force to strike an individual who was secured face-down in arm and leg restraints). When a person is compliant and nonthreatening, painful force is "unnecessary, gratuitous, and disproportionate." *See Meyers*, 713 F.3d at 734. Officer Ferguson described "mandibular pressure" as a technique that is deployed "to convince a suspect to stop resisting." JA96. In *Sawyer v. Asbury*, this Court highlighted a prison guard's testimony that pain compliance techniques such as mandibular pressure are properly used to induce compliance, but not to cause pain for the sake of pain. *See* 537 Fed. App'x 283, 287 (4th Cir. 2013) ("[W]hen they comply, you stop."). Here, Officer Ferguson used the pain compliance technique only after Mr. Anderson was handcuffed, face-down on the ground, controlled by two

other officers, and compliant. Mr. Anderson was neither threatening nor resisting arrest. This Court's precedents and Officer Ferguson's own sworn statement make clear that his use of a pain compliance technique was excessive under these circumstances.

Officer Ferguson's commands to stop moving cannot make his use of force reasonable because Mr. Anderson neither moved nor posed a threat. On the first point, immediately before Officer Ferguson imposed pain, he ordered Mr. Anderson to "stop moving." *See* video at 1:43–1:45. But the video does not show any voluntary movement by Mr. Anderson. *Id.* Mr. Anderson's head moved up and down only because Officer Ferguson grabbed him by the hood of his jacket and jerked his head off the pavement. *See id.*

Second, Officer Ferguson's order was pointless because Mr. Anderson did not pose any threat. Officers had tightly handcuffed Mr. Anderson face-down in the middle of the street and were kneeling on him. He was compliant and capable of little, if any, meaningful movement while restrained in this way. Officer Ferguson thus imposed excessive force when he deliberately inflicted pain on Mr. Anderson for no reason. A reasonable jury could also find that Officer Ferguson's efforts to cause

23

Mr. Anderson pain by refusing to loosen his handcuffs—barking at Mr. Anderson, "If you would have cooperated, you wouldn't have to worry about getting cuffs on tight"—undermines Officer Ferguson's assertion that force was necessary.  Video at 3:11–3:20.  Given Mr. Anderson's compliance, the painful force Officer Ferguson used was "gratuitous[] and disproportionate."  *See Meyers*, 713 F.3d at 734.

Courts have recognized that pain compliance techniques are dangerous and even potentially lethal and are disproportionate when used against nonthreatening, compliant individuals.  *See, e.g.*, *Lunneen v. Vill. of Berrien Springs*, No. 22-2044, No. 22-2046, 2023 WL 6162876 (6th Cir. Sept. 21, 2023); *Dominguez v. City of Scottsdale*, 587 F. Supp. 3d 914, 931 (D. Ariz. 2022) (holding that a pain compliance technique was "non-trivial and substantial" force which a jury could find excessive).  The Sixth Circuit in *Lunneen* held that summary judgment was inappropriate when there was a genuine dispute over how much pressure officers had used on the plaintiff's neck with a mandibular technique that contributed to his death by asphyxiation.  *See Lunneen*, 2023 WL 6162876, at *6.  The *Lunneen* plaintiff was "minimally threatening" because, like Mr. Anderson, he was handcuffed, knelt upon, and face-down when the

24

officers pressed on his neck. *Id.* at 9–10. The *Lunneen* court's conclusion that the officers' force was so disproportionate that they were not entitled to qualified immunity shows that Officer Ferguson's use of the technique was also disproportionate. *See id.*

Seen properly through the lens of summary judgment, with all facts viewed in the light most favorable to Mr. Anderson, there is also a dispute regarding the amount of pain Officer Ferguson inflicted. Mr. Anderson alleges that the severity of the pain compliance technique caused him to lose consciousness, and the video footage does not resolve this dispute. *See* JA17; video at 1:41–1:46. A dispute about the extent of force is grounds for reversal because "even if . . . force was necessary . . . a reasonable jury could nonetheless find the degree of force excessive." *Kopf v. Wing*, 45 F.3d 426 (4th Cir. 1995); *see also Jennings v. Jones*, 499 F.3d 2, 11 (1st Cir. 2007) (holding that summary judgment was inappropriate where it was disputed how much force was used in an "ankle turn control technique").

Mr. Anderson is entitled to reversal. Officer Ferguson used a serious, pain-inducing technique on Mr. Anderson after he had been tackled and tightly handcuffed while face-down on the ground and naked

from the waist down.  A reasonable jury could find that Mr. Anderson moved, if at all, involuntarily as a reaction to the shock of being tackled, handcuffed, and yanked by Officer Ferguson.  A reasonable jury could also find that Officer Ferguson had no reason to inflict pain on Mr. Anderson because he was motionless and compliant when Officer Ferguson needlessly ordered him to "stop moving" before immediately pressing on Mr. Anderson's neck.  *See* video at 1:45–1:48. The district court's grant of summary judgment should be reversed.

## II.   THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING MR. ANDERSON LEAVE TO AMEND HIS COMPLAINT.

Proceeding pro se, Mr. Anderson moved for leave to amend his complaint to add Officer Wagoner and Sergeant Phillips, the two other officers who participated in Mr. Anderson's arrest.  Mr. Anderson only learned the names of these officers after he filed his initial complaint, when his defense attorney in the criminal case arising from the arrest received discovery.  JA49.  In his motion, Mr. Anderson explained that he was suffering from post-traumatic stress disorder and memory loss. *See* JA51.  Although the defendants had yet to file a responsive pleading, the district court denied Mr. Anderson's motion to amend.  *See* JA5.

26

The district court not only violated Rule 15, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), but also this Court's requirement that district courts "liberally allow amendment" unless they identify prejudice, futility, or bad faith. *See United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022); *see also Laber v. Harvey*, 438 F.3d 404, 429 (4th Cir. 2006) (en banc) (finding abuse of discretion in denial of leave to amend where amendment was neither prejudicial nor futile and not made in bad faith). By denying Mr. Anderson's motion without specifying one of these narrow circumstances, the district court committed legal error constituting an abuse of discretion. *See MedCom*, 42 F.4th at 197.

The district court's denial of Mr. Anderson's motion violated the Federal Rules' requirement that district courts "should freely give leave" to amend a complaint "when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). District courts should "liberally allow amendment," consistent with the goal of "resolving cases on the merits, instead of on technicalities." *MedCom*, 42 F.4th at 197. This Court therefore permits denial of leave to amend only when an amendment would be prejudicial, futile, or in bad faith. *Laber*, 438 F.3d at 427. If a district court fails to

27

identify one of these three categories or to make its reasoning otherwise "apparent," it has abused its discretion. *MedCom*, 42 F.4th at 197–98. The district court's order denying leave to amend to add Officer Wagoner and Sergeant Phillips did not mention futility, prejudice, or bad faith and its reasoning was not apparent.[3] *See* JA5. That in itself was an abuse of discretion. *See MedCom*, 42 F.4th at 197.

The district court's only explanation relied upon Mr. Anderson's earlier filing of a motion to amend that he later asked the court to disregard. *See* JA5. According to the district court, "[n]othing . . . explain[ed] [Mr. Anderson's] reversal of his reversal regarding the addition of Phillips and Wagoner." *Id.* The district court denied Mr. Anderson leave to amend solely because of Mr. Anderson's reasons for asking the court to disregard his first motion:

> (A) Plaintiff previously has indicated that his desire to add them as Defendants resulted from his poor 'understanding' and status as a 'mental patient,' and
> (B) their addition as Defendants would delay the case from moving forward until service of process on them could occur (counter to Plaintiff's twice expressed wishes).

---

[3] By contrast, the district court rejected Mr. Anderson's other proposed amendments for futility. *See* JA5.

*Id.* (quoting JA50). But the district court did not suggest that Mr. Anderson's amended complaint could not survive a motion to dismiss or that the defendants would be prejudiced by the amended complaint when they had yet to engage in any responsive pleading. *See Laber*, 438 F.3d at 427; *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). And because, in its order, the district court acknowledged that Mr. Anderson was struggling with "poor understanding," nothing indicated that Mr. Anderson's decision to refile his motion was in bad faith. *See* JA5; *see also MedCom*, 42 F.4th at 198 (defining bad faith as "[t]o act with a dishonesty of purpose"). Thus, none of this Court's narrow exceptions were satisfied.

The district court also disregarded Mr. Anderson's explanation for why he had refiled his motion for leave to amend. Mr. Anderson explained to the district court the difficult circumstances that had affected him: "I[']m suffering from P[T]SD and head trauma with relapsed thoughts of my prior sexual assaults as a child and even memor[y] loss. D[ue] to my mental health issues I would ask that you take this in consideration and grant me relief to propose new

29

defendants . . . ." JA51. The aftermath of the arrest left Mr. Anderson "not . . . able to think correctly or comprehend normal[l]y." *Id.*

As a pro se litigant, Mr. Anderson was entitled to liberal construction of his motion. *See Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). Liberally construed, his motion for leave to amend explained why he had refiled it: his mental health and memory loss post-arrest had interfered with his thought process. But the district court did not engage with Mr. Anderson's extenuating circumstances or proffered explanation in its reasoning. *See* JA5.

Regardless of how this Court rules on the issue of summary judgment as to Officer Ferguson, it should remand to allow Mr. Anderson to amend his complaint. Mr. Anderson stated a plausible claim against Officer Wagoner and Sergeant Phillips when he alleged that they used excessive force against him and sexually assaulted him. JA51; JA54–55. These claims cannot be resolved by the video footage because it is obscured for many seconds during a critical portion of the arrest. Video at 1:29–1:39. Resolving Mr. Anderson's claims against these officers is in the interests of justice. The district court recognized that Officers Boissey and LaValley, whom Mr. Anderson named in his original

30

complaint, were entitled to summary judgment precisely because "[Sergeant] Phillips and Officer Wagoner, not Officer LaValley and Officer Boissey, participated in [Mr. Anderson's] arrest." JA187.

Ultimately, as a pro se litigant who learned the correct names of the other officers involved in his arrest only after filing his complaint, Mr. Anderson should have been allowed to amend his complaint under Rule 15. Mr. Anderson was navigating an unfamiliar system alone and deserved an opportunity to "test his claim on the merits" against all the officers who allegedly used excessive force. *See Foman*, 371 U.S. at 182. Denying leave to amend was an abuse of discretion because the district court failed to identify any permitted category, or provide any other reasoned justification, for denial of the motion to amend. The district court's denial should be reversed and remanded so that Mr. Anderson may add these defendants and fully adjudicate his claims.

## CONCLUSION

For these reasons, this Court should reverse the district court's grant of summary judgment and denial of Mr. Anderson's motion for leave to amend his complaint and remand for further proceedings.

31

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Anderson respectfully requests oral argument pursuant to Fed. R. App. P. 34(a) and Fourth Circuit Local Rule 34(a). This case presents an important question regarding the conditions under which use of the mandibular angle pressure point technique violates the Fourth Amendment's prohibition on excessive uses of force. The answer to this question will have significant implications for Mr. Anderson and similarly situated Section 1983 plaintiffs. Oral argument would assist the Court in answering this question.

Respectfully Submitted,


*/s/ Erica Hashimoto*
Erica Hashimoto
*Director*

Mary Borchers
Zacharia Hasan
*Student Counsel*

Georgetown University Law Center
Appellate Litigation Program
111 F Street NW, Suite 306
Washington, D.C. 20001
(202) 662-9555
eh502@law.georgetown.edu
Counsel for Appellant

November 20, 2023

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,840 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

Respectfully Submitted,

*/s/ Erica Hashimoto*
Erica Hashimoto

Georgetown University Law Center
Appellate Litigation Program
111 F Street NW, Suite 306
Washington, D.C. 20001
(202) 662-9555
eh502@georgetown.edu

Counsel for Appellant

November 20, 2023

## CERTIFICATE OF SERVICE

I, Erica Hashimoto, certify that on November 20, 2023, I electronically filed the foregoing Opening Brief of Appellant via this Court's CM/ECF system, which will send notice of such filing to counsel of record in the above-captioned case.

*/s/ Erica Hashimoto*
Erica Hashimoto
*Director*

Georgetown University Law Center
Appellate Litigation Program
111 F Street NW, Suite 306
Washington, D.C. 20001
(202) 662-9555
eh502@georgetown.edu

Counsel for Appellant

34